IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

USMONEY SOURCE, INC, d/b/a
SOLUNA FIRST,

                **Plaintiff,**

    v.                              **1:07-cv-0682-WSD**

AMERICAN INTERNATIONAL
SPECIALTY LINES INSURANCE
COMPANY,

                **Defendant.**

## OPINION AND ORDER

The matter is before the Court on Plaintiff USMoney Source, Inc.'s ("Plaintiff" or the "Insured") Motion for Summary Judgment [10], Defendant American International Specialty Lines Insurance Company's ("Defendant" or the "Insurer") Motion for Summary Judgment [11], Defendant's Motion for Leave to File a Response to Plaintiff's Supplemental Brief [18], and Plaintiff's Motion for Leave to File Supplemental Briefs [20].

## I.    INTRODUCTION AND FACTUAL BACKGROUND

This is an action for declaratory judgment on the scope of an insurer's obligation to defend and indemnify an insured.  Defendant contends it is not

obligated to defend and indemnify Plaintiff because the policy does not cover the loss alleged.

Defendant issued a Mortgage Bankers/Mortgage Brokers Errors and Omissions policy to Plaintiff for the policy period of May 27, 2005 to May 27, 2006 (the "Policy").[1]

The Policy contains a $1,000,000.00 policy limit and a $50,000.00 deductible.  The Policy obligates the Defendant:

> To Pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as Damages resulting from any Claim(s) first made against the Insured and reported to the Insurer during the Policy Period, or extended reporting period (if applicable), for any Wrongful Act[2] of the Insured or any other person for whose actions the Insured is legally responsible, but only if such a Wrongful Act occurs on or after the Retroactive Date and before the end of the Policy Period and occurs solely in the rendering of or failure to render Professional Services,[3] as defined herein.

---

[1]  The Court summarizes the statements of undisputed material facts submitted by Plaintiff and Defendant [10 & 11].  The two submissions are the same in all material respects.  The parties admitted all of the undisputed facts summarized above.

[2]  The Policy defines "Wrongful Act" as "any actual or alleged breach of duty, neglect, error, misstatement, misleading statement or omission committed solely in the Insured's Professional Services, as defined herein."

[3]  The Policy defines "Professional Services" as "the origination, sale, pooling and servicing of mortgage loans secured by real property."

The Policy contains several coverage exclusions, including one which provides that the Policy "does not apply to any Claim . . . arising out of any defective deed or title."

On April 25, 2005, TierOne Bank ("TierOne") and Plaintiff entered into a revised and modified Line of Credit and Security Agreement, pursuant to which TierOne extended to Plaintiff a $10,000,000.00 line of credit for the purpose of providing a sort of bridge funding for loans made by TierOne until the loans could be sold in the secondary market.

On February 24, 2006, Plaintiff submitted to TierOne a funding request for a loan in the amount of $391,950.00, to be secured by real estate located in Odenton, Maryland.  In response to the request, TierOne advanced $391,950.00 to Plaintiff.

On April 5, 2006, Plaintiff submitted to TierOne a funding request for a loan in the amount of $747,500.00, to be secured by real estate located in Seattle, Washington.  In response to the request, TierOne advanced $747,500.00 to Plaintiff.

On April 5, 2006, Plaintiff submitted to TierOne a funding request for a loan in the amount of $812,500.00, to be secured by real estate located in Seattle,

Washington.  In response to the request, TierOne advanced $812,500.00 to Plaintiff.

TierOne subsequently learned that its three loans to Plaintiff were not secured by valid and enforceable first liens on the subject properties.  Plaintiff was unable to obtain good title to the subject properties because of various fraudulent and other wrongful activities of persons not party to this action.[4]

On June 9, 2006, TierOne filed suit against Plaintiff in the United States District Court for the District of Nebraska.  See TierOne Bank v. U.S. Money Source, Inc., No. 4:06-cv-3135 (D. Neb. 2007) (the "Nebraska Action").  TierOne alleged that Plaintiff breached the Line of Credit Agreement, was negligent in its submission of funding requests for the three loans, and negligently misrepresented facts in the submission of its funding requests.  TierOne sought damages in the full amount of the three unsecured loans.

Plaintiff forwarded the complaint in the Nebraska Action to Defendant.  On January 17, 2007, Defendant sent to Plaintiff a letter denying coverage under the Policy, on the basis of the policy exclusions for actions arising out of defects of

---

[4] At least two individuals involved in the fraudulent mortgages have been criminally charged with conspiracy and wire fraud.  See United States v. Hawkins & Skeins, No. 2:06-mj-00210-JPD (W.D. Wash. May 1, 2006).

title, fraud, and any participation or prior knowledge of Plaintiff in the mortgage fraud.

On March 23, 2007, Plaintiff filed this action seeking a declaratory judgment that Defendant is obligated to defend and indemnify Plaintiff in the Nebraska Action.

On October 3, 2007, the United States District Court for the District of Nebraska entered judgment, following a bench trial, in favor of TierOne.[5]  The Court found that Plaintiff had breached the Line of Credit Agreement, negligently misrepresented that the three loans were secured by valid first liens on the subject real estate, and was negligent in its failure to assure that the three loans were secured by valid first liens.  The Court found Plaintiff liable for $1,625,630.71.

_____

[5] Both parties to this action moved for leave to file supplemental briefing. Plaintiff sought leave to file two supplemental briefs, one attaching the District Court's decision in the Nebraska Action and one attaching a recent decision of the Court of Appeals of Georgia [20].  Defendant sought leave to respond to Plaintiff's first supplemental brief [18].  Neither the Federal Rules nor the Court's Local Rules allow sur-reply briefs as a matter of right, see LR 7.1C, NDGa, and the Court normally does not permit sur-replies.  However, "the Court may in its discretion permit the filing of a surreply . . . where a valid reason for such additional briefing exists, such as where the movant raises new arguments in its reply brief."  Fedrick v. Mercedes-Benz USA, LLC, 366 F. Supp. 2d 1190, 1197 (N.D. Ga. 2005). The Court grants the parties' motions for leave to file supplemental briefing because the briefing directly relates to relevant issues that could not have been raised in the parties' prior submissions.

Both parties in this action have moved for summary judgment.  The only issues before the Court are (1) whether the Policy applies, and if so; (2) whether the Policy's exclusions bar Plaintiff's claim.

## II.   ANALYSIS

### A.   <u>The Standard on a Motion for Summary Judgment</u>

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party seeking summary judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact. <u>Herzog v. Castle Rock Entm't</u>, 193 F.3d 1241, 1246 (11th Cir. 1999).  Once the moving party has met this burden, the non-movant must demonstrate that summary judgment is inappropriate by designating specific facts showing a genuine issue for trial.  <u>Graham v. State Farm Mut. Ins. Co.</u>, 193 F.3d 1274, 1282 (11th Cir. 1999). "The nonmoving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings."  <u>Id.</u>

The Court must view all evidence in the light most favorable to the party opposing the motion and must resolve all reasonable doubts in the non-movant's

favor.  <u>United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of Am.</u>, 894 F.2d 1555,

1557-58 (11th Cir. 1990).  "[C]redibility determinations, the weighing of evidence,

and the drawing of inferences from the facts are the function of the jury . . . ."

<u>Graham</u>, 193 F.3d at 1282.  "If the record presents factual issues, the court must

not decide them; it must deny the motion and proceed to trial."  <u>Herzog</u>, 193 F.3d

at 1246.  But, "[w]here the record taken as a whole could not lead a rational trier of

fact to find for the non-moving party," summary judgment is proper.  <u>Matsushita</u>

<u>Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

    The parties agree on the material facts of this case.  <u>See</u> Docket Nos. 13 &

15.  The question for the Court is a pure question of law regarding whether there is

coverage under the Policy for the loss Plaintiff asserts.

### B.    <u>Construction of Insurance Agreements under Georgia Law</u>

    The Court exercises diversity jurisdiction over this case, <u>see</u> 28 U.S.C. §

1332(a), and applies Georgia law in construing the Policy.  <u>Erie R. R. Co. v.</u>

<u>Tompkins</u>, 304 U.S. 64, 79 (1938).

    An insurer's duty to defend its insured is determined by the terms of the

insurance contract.  <u>O'Dell v. St. Paul Fire & Marine Ins. Co.</u>, 478 S.E.2d 418, 419

(Ga. Ct. App. 1996).  An insurer may fix the terms of its coverage as it wishes,

specifically by insuring against certain risks and excluding others, providing that

the terms of agreement are not contrary to law.  Hulstzman v. State Farm Fire &

Cas. Co., 372 S.E.2d 9, 10 (Ga. Ct. App. 1988).  The parties to an insurance

contract are bound by the contract's plain and unambiguous terms, Richards v.

Hanover Ins. Co., 299 S.E.2d 561, 563 (Ga. 1983), and any exclusions in the

insurance contract must be defined clearly and distinctly.  Am. S. Ins. Co. v.

Golden, 373 S.E.2d 652, 653 (Ga. Ct. App. 1988).  "[I]f the policy exclusions are

unambiguous they must be given effect 'even if beneficial to the insurer and

detrimental to the insured.  [Georgia courts] will not strain to extend coverage

where none was contracted or intended.'"  Pilz v. Monticello Ins. Co., 599 S.E.2d

220, 221-22 (Ga. Ct. App. 2004) (quoting Jefferson Ins. Co. of N.Y. v. Dunn, 496

S.E.2d 696, 699 (Ga. 1998)).  If an exclusion is subject to more than one

construction, even if all constructions are logical, the exclusion is ambiguous, and

Georgia's statutory rules of construction apply.  Lakeshore Marine, Inc. v. Hartford

Accident and Indem. Co., 296 S.E.2d 418, 422 (Ga. Ct. App. 1982).  Georgia

statutes provide that an ambiguous exclusion must be construed strictly against the

insurer and in favor of the insured.  O.C.G.A. § 13-2-2(5); Hurst v. Grange Mut.

Cas. Co., 470 S.E.2d 659, 663 (Ga. 1996).

C.   **Discussion**

1.      **Applicability of the Policy**

Defendant initially contends that Plaintiff's claim is not covered by the Policy because the three loan transactions at issue in the Nebraska Action were not adequately secured by real property.  Defendant argues that "Professional Services" is defined in the Policy as "the origination, sale, pooling and servicing of mortgage loans secured by real property."  Because the three mortgage loans at issue were not, in fact, secured by real property, Plaintiff was not providing "Professional Services" as defined by the Policy.

The Court disagrees.  The Policy unambiguously covers Plaintiff for claims made against it for Wrongful Acts made in the rendering of or failure to render Professional Services, subject to the Policy's exclusions.  The undisputed facts in this case show that Plaintiff intended to create mortgage loans secured by real property and that, unbeknownst to Plaintiff, fraudulent activities by third parties prevented it from obtaining good title to the properties.  At least at this step of inquiry, Plaintiff was performing "Professional Services" when it committed the "Wrongful Acts" underlying the Nebraska Action.  Whether Plaintiff is entitled to defense and indemnification for suit based on those wrongful acts is not a question

of the whether the Policy applies in the first instance, but rather whether, as Defendant argues, Plaintiff's claim falls within one of the Policy's coverage exclusions.

### 2.   Construction of the Policy's Exclusion for Claims "arising out of any defective deed or title"

Defendant argues that the Policy excludes coverage for the claims brought against Plaintiff by TierOne because the claims "aris[e] out of . . . defective title" – an exclusion in the Policy.  The Court agrees.

Georgia courts frequently have construed the meaning of "aris[ing] out of" in the context of insurance agreements.  The Supreme Court of Georgia has held that "'arising out of' does not mean proximate cause in the strict legal sense, nor require a finding that the injury was directly and proximately caused . . . . almost any causal connection or relationship will do."  Se. Fidelity Ins. Co. v. Stevens, 236 S.E.2d 550, 551 (Ga. 1977).  In the context of exclusions in insurance agreements, the Supreme Court of Georgia has frequently and consistently construed "arising out of" to mean a "but-for" causal relationship – i.e., a claim "arises out of" a circumstance if, without the existence of that circumstance, the claim could not exist.  E.g., Dunn, 496 S.E.2d at 699 (claim against insured "arose

-10-

out of" assault and battery by insured's employee if, "'but for' an assault and battery *caused by* the employee, there could be no claim against [the insured].").

Georgia courts have frequently applied insurance policy exclusions for claims "arising out of" conduct by a third party that was a necessary precondition to claims later asserted against the insured.  E.g., Cotton States Mut. Ins. Co. v. Crosby, 260 S.E.2d 860, 861-62 (Ga. 1979) (negligence action against insured "ar[ose] from" third party's attack and rape); Dynamic Cleaning Serv., Inc. v. First Fin. Ins. Co., 430 S.E.2d 33, 34-35 (Ga. Ct. App. 1993) (negligence claim against insured "based on" assault and battery); Continental Cas. Co. v. H.S.I. Fin. Serv., Inc., 466 S.E.2d 4, 6 (Ga. 1996) ("[I]t is clear that [the] claim . . . 'arose out of' [the] actions, because but for [the] actions, there could be no claim against [the insureds].")); Pilz, 599 S.E.2d at 222-23; Dunn, 496 S.E.2d at 699; Manning v. USF&G Ins. Co., 589 S.E.2d 687, 688-91 (Ga. Ct. App. 2003) (reviewing Georgia precedent).

Applying the consistent Georgia precedent, Defendant argues that the claims asserted against Plaintiff in the Nebraska action are excluded under the Policy because, but for the lack of marketable title, the claims could not exist.  That is, had Plaintiff obtained good title to the three subject properties, it could not have

been subject to liability for breach of contract, negligent misrepresentation, and negligence.

The Court agrees that the claims asserted against Plaintiff by TierOne "arose out of" a defect in title and are excluded under the Policy.  If Plaintiff had acquired valid marketable title to the three subject properties, it would have satisfied its contractual and common law duties to TierOne.  The basis of TierOne's lawsuit was the absence of marketable title on the properties.  That is, the suit would not have been filed but for the defective titles at issue.  In accordance with Georgia courts' construction of the phrase "arose out of," in an insurance policy context, TierOne's claims against Plaintiff "arose out of" the defects in title because they were caused specifically by the defects of title and because the claims could not exist unless the titles were defective.

Plaintiff argues that the exclusion does not apply because Plaintiff's *conduct* did not cause the defective titles at issue in this matter.  Georgia courts do not inquire into whether an insured's *conduct* caused the policy exclusion but rather whether *circumstances* caused the policy exclusion.  Indeed, Georgia courts have often analyzed whether negligence claims against an insured were barred under policy exclusions based on intentional acts of third parties, consistently affirming

that an insured does not need to cause a policy exclusion for it to apply.  Cotton

States, 260 S.E.2d at 861-62; Dynamic Cleaning, 430 S.E.2d at 34-35; Continental

Cas., 466 S.E.2d at 6; Dunn, 496 S.E.2d at 699; Manning, 589 S.E.2d at 688.

The only limited exception to this rule appears to be that a claim does not

"arise out of" a circumstance if, independent of that circumstance, the claim could

still exist.  For instance, the Court of Appeals of Georgia's recent decision in

Fireman's Fund Ins. Co. v. Univ. of Ga. Athletic Assoc., Inc., __ S.E.2d __, 2007

WL 3345094 (Ga. Ct. App. 2007), held that to fall within a policy exclusion, the

claim against an insured must have been caused by the circumstance of the policy

exclusion.[6]  This holding is similar to a partial holding in the Cotton States case,

which stated that a claim for unlawful detention against an insured did not "arise

out of" a "bodily injury" because the circumstances underlying the unlawful

detention claim could have existed without any bodily injury.  Cotton States, 260

S.E.2d at 862-63.  This limited exception does not apply here because the defects

in title for the three subject properties bear a direct causal relationship to TierOne's

_____

[6] The Court of Appeals also denied the application of a policy exclusion for
"failure to effect . . . insurance" based on the exclusion's "ambiguous" language.
Fireman's Fund, 2007 WL 3345094, at *5.  Because the term "arising out of" is
unambiguous, the Court is not required to construe it strictly against the Insurer.

claims against Plaintiff.  TierOne's claims could not have existed without the title defects.

The Court finds, consistent with Georgia law, that the claims by TierOne against Plaintiff "arose out of" defects of title.  Because the Policy unambiguously excludes claims "arising out of" defective title, Defendant is not obligated to defend or indemnify Plaintiff in the Nebraska Action.

**III.   CONCLUSION**

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendant American International Specialty Lines Insurance Company's Motion for Summary Judgment [11] is **GRANTED**.

**IT IS HEREBY FURTHER ORDERED** that Plaintiff USMoney Source, Inc's Motion for Summary Judgment [10] is **DENIED**.

**IT IS HEREBY FURTHER ORDERED** that Defendant's Motion for Leave to File Response to Plaintiff's Supplemental Brief [18] and Plaintiff's Motion for Leave to File Supplemental Briefs [20] are **GRANTED**.

**SO ORDERED** this 15th day of January 2008.


_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE